UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN A. MURPHY, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:07CV01247 JCH |
| ) | |
| FEDEX NATIONAL LTL, INC., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendant FedEx National LTL, Inc.("FedEx" or "Defendant"), filed July 15, 2008. (Doc. No. 19). The matter is fully briefed and ready for disposition.

## BACKGROUND

**Plaintiff's Employment**

Plaintiff Susan A. Murphy ("Plaintiff") and her husband, Paul Murphy, were employed as truck drivers by Watkins Motor Lines ("Watkins"), beginning in June 1998. (Defendant's Statement of Uncontroverted Material Facts ("DSUMF"), Doc. No. 21, ¶ 1). Plaintiff's and her husband's supervisor at Watkins was Jeff Karnes. (DSUMF, ¶ 2). Between May and August 2006, Watkins told its employees that it was being purchased, in part, by FedEx. (DSUMF, ¶ 3). Employees also received a memorandum and newsletter explaining the transition from Watkins to FedEx. (DSUMF, ¶ 3). On August 1, 2006, FedEx sent offers of employment to most active Watkins employees, including Plaintiff and Paul Murphy, in anticipation of the closing of the Asset Purchase Agreement between Watkins and FedEx. (DSUMF, ¶ 4). Neither the newsletter nor the offer letter addressed how Watkins employees, who were not active as of the date of the closing of the sale to FedEx would

be treated with respect to their leave or their potential employment with FedEx. (DSUMF, ¶ 7). Plaintiff and her husband received and accepted offers of employment and completed their pre-employment paperwork, which they received on August 2, 2006. (DSUMF, ¶ 4).

The Asset Purchase Agreement between Watkins and FedEx closed on September 3, 2006. (DSUMF, ¶ 18). Plaintiff never received a copy of the Asset Purchase Agreement. (Plaintiff's Statement of Additional Facts ("PSOAF"), Doc. No. 27, ¶ 3).[1]

Due to his illness, Paul Murphy's last day of work was August 15, 2006. (DSUMF, ¶ 12). Paul Murphy went on FMLA leave on August 17, 2006. (DSUMF, ¶ 13). Plaintiff went on FMLA leave on August 28, 2006 to care for her husband. (DSUMF, ¶¶ 13-14). After requesting approval for FMLA leave, Plaintiff and Paul Murphy received a letter designating the terms of their FMLA leaves of absence from Watkins. (DSUMF, ¶ 16). The FMLA designation provided that their "failure to work on the first workday following the expiration of your FMLA leave for any reason will constitute a voluntary resignation by you unless the Company has approved an alternative arrangement prior to the expiration of your FMLA leave." (DSUMF, ¶ 17).

Although it was anticipated that he would be released from the hospital, Paul Murphy died suddenly on September 7, 2006. (PSOAF, ¶ 15). Plaintiff and her husband had been married for 22 years. (PSOAF, ¶ 16). That same day, Plaintiff called and notified Karnes of her husband's death. (PSOAF, ¶ 17). Karnes e-mailed Kim Witt, a human resources representative for FedEx, and said "Susan is worried about several things regarding benefits. Since she is crying I told her I would take [care] of this for her." (PSOAF, ¶ 17). Plaintiff claims that, on September 11, 2006, Karnes called

---

[1] Document Number 27 includes Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts and Plaintiff's Statement of Additional Facts. Because Plaintiff began renumbering her response with her "additional facts," the Court shall refer to Plaintiff's response to Defendant's Statement of Facts as "PSUMF" and her additional facts as "PSOAF".

her and told her that she would not have to reapply to FedEx to work. (PSOAF, ¶ 19). Karnes asked her how much additional time she would need before returning to work. (Id.) Plaintiff asked for an additional 30 days "to take care of things." (Id.) Karnes told Plaintiff that an additional 30 days was "not a problem" and said he would let human resources know. (Id.) Plaintiff testified that she understood that she and Karnes were discussing how much longer her FMLA leave would continue, and she believed that her FMLA leave was approved for an additional 30 days. (PSOAF, ¶¶ 20-21). Karnes told Plaintiff he would send her a bid sheet for October, and he did so. (PSOAF, ¶ 19). Karnes testified that, when he spoke to Plaintiff after the death of her husband, she was often crying and seemed "very sad." (PSOAF, ¶ 22). Defendant never asked for any additional medical certification to demonstrate that Plaintiff suffered from a "serious medical condition." (PSOAF, ¶¶ 23-25).

Plaintiff testified that she intended to return to work at FedEx at the end of her 30 day leave, as granted by Karnes. (PSUMF, ¶ 56). On September 15, 2006, however, Karnes notified Plaintiff that she had been "separated" from the company. (PSOAF, ¶ 26). Karnes filled out the paperwork which stated that FedEx terminated Plaintiff on September 12, 2006. (Id.) There was no paperwork from Watkins terminating Plaintiff's employment. (PSOAF, ¶27).

**Life Insurance**

Plaintiff and her husband had life insurance coverage from Watkins in the amount of $15,000 for employees and $5,000 for spouses. (PSOAF, ¶ 30). Supplemental life insurance coverage for Plaintiff and her husband from Watkins was $80,000 for employees and $40,000 for spouses. (Id.) For FedEx employees, basic life insurance was one and one-half (1 ½) times the basic annual earnings rounded to the nearest $1000, and for spouses was $5000. (PSOAF, ¶ 31). In 2005, Mrs. Murphy's annual earnings from Watkins were $65,027.95 and her husband's

earnings were $65,585.06. (Id.) Supplemental life insurance coverage for each of the Murphys while they were FedEx employees was $200,000 in employee coverage and $100,000 in spouse coverage. (Id.) Plaintiff and her husband timely submitted their FedEx Term Life Insurance Enrollment Forms. (PSOAF, ¶ 32).

Watkins submitted Plaintiff's life insurance claim for her husband's and her spousal benefits. (DSUMF, ¶ 43). Plaintiff received payment in the amount of $140,000 pursuant to this life insurance claim. (DSUMF, ¶ 49). Plaintiff also accepted payment from Watkins for three days of bereavement leave. (DSUMF, ¶ 45). The FedEx Plan Administrator denied Plaintiff's claim for life insurance benefits under the FedEx policy. (DSUMF, ¶ 67). Plaintiff claims that she is owed an additional $264,000, plus interest, under the FedEx plan. (DSUMF, ¶ 49).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S.

at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**DISCUSSION**

**I.     Defendant's Motion for Summary Judgment on Plaintiff's FMLA Claim**

Plaintiff has brought a claim for violation of the FMLA based upon Defendant's termination of her in contravention of her FMLA rights. Plaintiff alleged that Defendant terminated Plaintiff "because she was on FMLA leave." (Second Amended Complaint, Doc. No. 4, ¶¶ 25-28). To prevail on a FMLA interference claim, a plaintiff must establish that 1) he or she is an "eligible employee;" 2) the defendant is an "employer;" 3) the employee was entitled to leave under the FMLA; 4) the employee gave the employer notice of his or intention to take FMLA leave; and 5) the employer denied the employee benefits to which he or she was entitled. Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Defendant claims it is entitled to summary judgment on Plaintiff's claim because Plaintiff cannot establish the elements of an FMLA claim as a matter of law.

**A.     Was FedEx Plaintiff's Employer?**

The crux of Plaintiff's claim for relief is that she was an employee of FedEx at the time of the termination of her employment because she and her husband had accepted FedEx's offers of employment and completed all of the conditions precedent to employment. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Memorandum in Opposition"), Doc.

No. 26, pp. 2-5). In Defendant's Reply Brief in Support of Motion for Summary Judgment ("Reply"), it argues that Plaintiff and her husband did not satisfy all of the conditions precedent to become employees of FedEx pursuant to their offer letters. (Reply, Doc. No. 30, pp. 2-3). Defendant claims that Plaintiff and her husband did not satisfy the condition precedent in the offer letters that if Plaintiff's and her husband's "performance remain[ed] satisfactory, the effective date of your employment [would] be the closing date of the transaction contemplated by the asset purchase agreement..." (Id.)

Both sides have presented facts to support their claims that Plaintiff and her husband were either employees of Watkins or FedEx. Defendant has presented the following evidence that Plaintiff was an employee of Watkins and not FedEx:

- The Asset Purchase Agreement between FedEx and Watkins contained conditions that Watkins employees who were on leave (including FMLA leave) would have to meet before they could become employees of Fed Ex, which Defendant alleges Plaintiffs did not meet. (DSUMF, ¶ 10; Reply, pp. 2-3).

- After Plaintiff and her husband requested leave, they received a letter from Watkins (not FedEx) explaining their FMLA rights. (DSUMF, ¶ 16). The FMLA designation provided to Plaintiff and her husband from Watkins stated that their employment would be terminated if they failed to return to work after the end of their FMLA leaves. (DSUMF, ¶ 17).

- FedEx claims that Plaintiff called on September 5, 2008, and Plaintiff was confused as to whether she was an employee of Watkins or FedEx. (DSUMF, ¶ 19; but see PSUMF, ¶ 19).

- Plaintiff was told that FedEx was accepting applications from employees on leave "on a come off leave" basis. (DSUMF, ¶ 21).

- It was assumed that those former-Watkins employees who transferred to FedEx would report to FedEx the day after the deal closed, which Plaintiffs did not. (DSUMF, ¶ 6).

- Plaintiff acknowledged that her employment with FedEx was to begin when she returned to work. (DSUMF, ¶ 23).

- Karnes, Plaintiff's supervisor, confirmed that Plaintiff was still a Watkins employee in an e-mail regarding the death of her husband. (DSUMF, ¶ 24).

- Plaintiff sought and obtained life insurance benefits from Watkins after the death of her husband. (DSUMF, ¶ 41).

There are, likewise, facts to support Plaintiff's position that she was an employee of FedEx.

- Plaintiff and her husband received a newsletter and offer letter regarding employment with FedEx but neither addressed how employees on leave would be handled. (PSUMF, ¶ 7).

- According to Plaintiff, as of September 3, 2006, she and her husband had satisfied all of the preconditions in the FedEx employment offers: they completed the applicable pre-hire process, they accepted FedEx's offer within 5 business days of receipt of the offers and their performance had remained satisfactory. (PSOAF, ¶ 4).

- Plaintiff and her husband were never told that their offers of employment (and their acceptance) were not valid if they were on leave when the deal closed. (PSOAF, ¶¶ 1-2).

- On or around September 9, 2006, Vanguard wrote Plaintiff regarding her options for rolling over to her Watkins Incentive Savings Plan to the FedEx retirement plan. (PSOAF, ¶ 7). Similarly, on September 11, 2006, Plaintiff received her health insurance cards from Aetna, which listed Plaintiff's employer as FedEx. (PSOAF, ¶ 6).

- On September 11, 2006, Karnes told Plaintiff that she would not have to reapply to FedEx because she was already an employee of FedEx. (PSOAF, ¶ 19).

- FedEx provided the documents notifying Plaintiff of her termination. (PSOAF, ¶ 26).

- Plaintiff never received any documentation from Watkins regarding her termination. (PSOAF, ¶ 27).

- When she requested life insurance benefits, Plaintiff initially contacted Kim Witt, an employee of FedEx, not Watkins. (PSUMF, ¶ 41).

- Karnes told Plaintiff to contact Karen Schmidt, an human resources employee for FedEx, regarding Plaintiff's COBRA benefits. (PSUMF, ¶ 46).

The undisputed facts fail to demonstrate that Plaintiff and her husband were employees of Watkins, not FedEx. As previously stated, Plaintiff claims that she and her husband became employees of FedEx when they accepted their contracts of employment with FedEx and completed their preconditions for employment. Defendant relies on Brackett v. Easton Boot & Shoe Co., 388 S.W.2d 842 (Mo. 1965) to support its claim that Plaintiff did not meet the conditions precedent for her employment contract with FedEx. The Brackett court held that the plaintiff did not qualify for vacation pay under the contract because she had not been in "the continuous service of the employer" for the requisite number of years as required under her contract. Id. at 847. Here, however, there is no such unequivocal language in Plaintiff's employment contract. Rather, the contract simply required that Plaintiff's "performance remains satisfactory." Defendant claims that Plaintiff's performance did not remain satisfactory because Plaintiff "voluntarily sought a leave of absence ... to care for her husband." (Reply, pp. 2-3). Defendant has provided no other indication that Plaintiff's performance was not satisfactory. Defendant's position that Plaintiff's performance was unsatisfactory because she took FMLA leave attempts to penalize Plaintiff for exercising her statutory leave rights. Clearly, this does not conform with the purpose of the FMLA. This Court finds that there is ample factual support that Plaintiff was an employee of FedEx at the time of her

termination, particularly because Plaintiff was terminated by FedEx, not Watkins. The undisputed material facts fail to demonstrate that Plaintiff was an employee of Watkins, and Defendant's Motion for Summary Judgment fails.[2]

Defendant also argues that Plaintiff should be treated like those employees that were on leave at the time of the closing of the Asset Purchase Agreement. The Asset Purchase Agreement between FedEx and Watkins provided that: "[FedEx] intends to offer employment to Employees [of Watkins] who, as of the Closing Date, ... are on personal leave or medical leave of absence ..., effective as of the date such person actually returns to work, provided such Employee has been released to return to work, ... within six (6) months after the Closing Date and meets [Fed Ex's] employment terms, conditions, requirements, policies and practices." (DSUMF, ¶10). Defendant, however, did not make offers of employment to Watkins employees who, unlike Plaintiff and her husband, were on leaves of absence when the Asset Purchase Agreement was announced in August 2006. (Memorandum in Opposition, p. 2). Thus, those employees, unlike Plaintiff and her husband, had no offers of employment to accept and are not comparable. If Plaintiff and her husband entered into an employment agreement with FedEx prior to going on leave, whether or not they went on leave after

---

[2] Defendant also argues that not only was Plaintiff not an employee of FedEx but that FedEx also does not have any successor liability under the FMLA. The term "employer" under the FMLA includes any successor in interest of an employer. 29 U.S.C.A. § 2611(4)(A)(ii)(II). Plaintiff claims that FedEx should have successor liability for Plaintiff's claim. The regulations instruct courts to consider the following enumerated factors when determining successor liability: (1) substantial continuity of the same business operations; (2) use of the same plant; (3) continuity of work force; (4) similarity of jobs and working conditions; (5) similarity of supervisory personnel; (6) similarity in machinery, equipment, and production methods; (7) similarity of products and services; and (8) the ability of the predecessor to provide relief. 29 C.F.R. § 825.107. "Whether or not a 'successor in interest' exists is not determined by the application of any single criterion, but rather the entire circumstances are to be viewed in their totality." Defendant, however, admits that most, if not all, of the eight factors identified in 29 C.F.R. § 825.107 have been met. (Memorandum in Support, p. 7). As this Court has held that Defendant has failed to demonstrate, as a matter of law, that Plaintiff was not an employee of FedEx at the end of her FMLA leave or her termination, a more detailed analysis of whether FedEx had successor liability is not necessary.

the execution of the Asset Purchase Agreement is irrelevant. Because it has failed to establish that Plaintiff was not an employee of FedEx, Defendant is not entitled to summary judgment on this basis.

## B. Did Plaintiff Provide Notice of FMLA Leave After the Death of Her Husband?

### 1. Standard

An employee must provide notice to an employer that he plans to take FMLA leave. 29 U.S.C. § 2612(e)(2); Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006). But, the "notice requirements of the FMLA are not onerous." Burnett v. LFW Inc., 472 F.3d 471, 478 (7th Cir. 2006). To benefit from the protections of the FMLA, an employee must provide his employer with "enough information to show that he may need FMLA leave." Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Although the employee need not name the statute, she must provide information to suggest that his health condition could be serious. Woods, 409 F.3d at 990-91(citing Collins v. NTN-Bower Corp., 272 F.3d 1006, 1009 (7th Cir. 2001)); Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 471 (8th Cir. 2007). Employees thus have an "affirmative duty to indicate both the need and the reason for the leave," and to let their employers know when they anticipate returning to their positions. Woods, 409 F.3d at 990-991 (citing Sanders v. May Dep't Stores Co., 315 F.3d 940, 944 (8th Cir. 2003); 29 C.F.R. § 825.302(c)). "'[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave.'" Rask, 509 F.3d at 471-472 (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir.1999), cert. denied, 528 U.S. 1050, 120 S. Ct. 588, 145 L. Ed. 2d 489 (1999)). The employer has a duty to investigate whether the employee is entitled to FMLA leave. Rask, 509 F.3d at 474; Woods, 409 F.3d at 991("an employer has the right to request supporting information from the employee").

## 2. Defendant Could Have Been On Notice

Defendant argues that, when Plaintiff notified Karnes that she needed an additional 30 days to "take care of things," this was not a request for FMLA leave, but instead for bereavement leave. Defendant is correct that "bereavement leave or absence from work following the death of one's immediate family is not protected by the FMLA." Barone v. Leukemia Soc'y of Am., 42 F. Supp. 2d 452, 460 (D. N.J. 1998); see Hoban v. WBNCC Joint Venture, No. 06-13142, 2007 U.S. Dist. LEXIS 25407, at *11 (E.D. Mich. Apr. 5, 2007) (where plaintiff asked for bereavement leave and called in to say he was in "no condition to work," that "comment alone fail[ed] to put Defendant on notice that Plaintiff was suffering from a 'serious health condition'"); Lange v. Showbiz Pizza Time, 12 F. Supp. 2d 1150, 1154 (D. Kan. 1998) ("a 'serious health condition' within the meaning of the FMLA contemplates only "medical conditions affecting the living'") (allowing plaintiff to amend to complaint to present evidence that he was entitled to FMLA leave due to the "grief and despair" he suffered following the death of his mother); cf. Stubl v. T.A. Sys., 984 F. Supp. 1075, 1085 ( E.D. Mich. 1997) (where plaintiff wrote a letter to his employer that "I am taking this leave of absence based on my personal loss caused by the death of Keith Jr. with regards to my personal health," the court held that plaintiff's leave was covered under the FMLA).

Plaintiff, however, claims that she was not asking for bereavement leave, but instead was seeking a continuation of her FMLA leave to care for herself after her husband's death. The Court believes that Plaintiff's employer's knowledge of Plaintiff's husband's death, the fact that she was crying, and that she asked for additional time to "take care of things" could be sufficient to put her employer on notice that she was asking for FMLA leave. If the employer had questions regarding whether Plaintiff was attempting to continue her FMLA based upon her own personal illness, it

should have followed up with Plaintiff. A fact question exists as to whether FedEx should have been on notice that Plaintiff was invoking her right to FMLA leave.

### 3. Defendant is estopped from asserting that Plaintiff did not invoke her FMLA rights.

Furthermore, Defendant is estopped from denying that Plaintiff did not provide sufficient notice because its agent approved her leave request. The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001). "Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." Id. Whether equitable estoppel applies in a given case is ultimately a question of fact. Id.

The Court in Kosakow addressed a similar issue as discussed here:

> [T]he FMLA imposes a legal duty upon the employer to inform its employees of the conditions that they must meet in order to be covered by the FMLA. See 29 U.S.C. § 2619. Moreover, an employer must notify an employee who plans to take medical leave whether her proposed leave is covered by the FMLA before the employee takes the leave. 29 C.F.R. § 825.110(d), n6; see also 29 C.F.R. § 825.219(a) (employer must, prior to employee taking leave, notify employee that employee is ineligible for FMLA protection because she is a "key employee"). Read together, these provisions indicate that an employee can generally assume that she is protected by the FMLA unless informed otherwise. Accordingly, an employer who remains silent when its employee announces that she plans to take medical leave is effectively misleading that employee into believing that she is protected by the FMLA. Under these circumstances, New Rochelle's silence in the face of its legal duty to inform Kosakow of her ineligibility is properly construed as an affirmative misrepresentation.

Id. at 725-726; see also Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 494 (8th Cir. 2002) (affirming the district court's determination that Norton-Alcoa Proppants should be equitably estopped from contesting Plaintiff's eligibility to assert a claim under the FMLA where plaintiff relied

on the leave time period defined in a letter from the employer to the plaintiff); Woodford v. Community Action of Greene County, Inc., 268 F.3d 51, 57 (2d Cir. 2001) (authorizing equitable estoppel where an employer initially provided notice of eligibility for leave and later sought to challenge it); Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000) (recognizing a district court's ability to equitably estop employers from asserting an affirmative defense to an employee's entitlement to FMLA leave in situations where the employer's words or conduct has misled the employee into relying on the leave); Gurley v. Ameriwood Indus., 232 F. Supp. 2d 969, 974 (E.D. Mo. 2002) ("Federal law principles of equitable estoppel are applicable to estop an employer in an FMLA case from asserting an affirmative defense contesting an employee's entitlement to FMLA where the employer's representations misled the employee into relying on the leave."). Further, an employer may be estopped where that employer makes a definite misrepresentation (or, a misrepresentation by silence) and had reason to believe the employee would rely upon it, regardless of whether the employer intended to deceive. Kosakow, 274 F.3d at 726.

Here, on September 11, 2006, Plaintiff told Karnes that she needed thirty days to "take care of things." Karnes indicated that 30 days was "not a problem" and that he would contact human resources. Plaintiff testified that she was under the assumption that her FMLA leave had been "okayed." (Memorandum in Opposition, p. 10). Plaintiff was justified on relying on these statements.

If Defendant had notified Plaintiff that this leave was not FMLA leave or that she had not provided sufficient medical certification to prove that she had a serious health condition, then Plaintiff may have been able to provide medical information to support a claim that she suffered from a serious medical condition. For example, as stated in Plaintiff's supplemental statement of facts, Plaintiff could have obtained a note from her oncologist, Dr. Nelida Sjak-Shie, stating that Plaintiff "should be excused from work for 30 days following her husband's death because of her difficulty sleeping,

multiple crying spells, and reduced energy and activity." (PSOAF, ¶ 23). Plaintiff also could have obtained a note from Dr. Patil, her husband's physician stating that Plaintiff "should be excused from work for 30 days to recover from the shock of her husband's death." (PSOAF, ¶ 25). Defendant, however, did not notify Plaintiff that her claim for leave had been disapproved or that Plaintiff had failed to provide sufficient information to support a claim for FMLA leave. Instead, Defendant allowed Plaintiff to rely on Karnes' representation that he would "take care of" her request for an additional 30 days of leave. Thus, the parties will never know what additional information Plaintiff would have provided if Defendant had not caused her to believe that her request for leave had been approved. As a result, this Court believes that Defendant should be estopped from denying that it approved Plaintiff's FMLA leave and Defendant's motion for summary judgment on Plaintiff's FMLA claim on this ground is denied.

Defendant relies on Fatima v. Lab Corp. of America, No. 04-5739, 2006 U.S. Dist. LEXIS 75724 (D.N.J. Oct. 18, 2006) as "remarkably similar" to the present action (Memorandum in Support, p. 9), but several important facts differentiate Fatima. In Fatima, Lab Corp. approved the plaintiff's FMLA leave to care for her dying father in India on November 4, 2002. Id. at *4-5. On November 7, Lab Corp. learned that Fatima's father had died. Id. at *5. On November 11, Lab Corp. contacted Fatima's husband and told him that it expected Fatima to return to work the following day. Id. Fatima's husband told Lab Corp. that it was "impractical" for his wife to return the following day because her return ticket from India had already been purchased. Id. Thereafter, Lab Corp. sent Fatima a letter, dated November 12, informing her that she had to return to work by November 18. Id. at *6. When Fatima did not return to work, Lab Corp. sent Fatima a letter on November 22 stating that Fatima had voluntarily resigned her position due to job abandonment. Id.

In contrast, in the present case, Plaintiff did not fail to return to her employment after her husband's death because it was "impractical." Rather, the undisputed evidence is that Plaintiff did not return because she needed more time to take care of things or "she just wasn't ready to come back and she wanted 30 more days." (PSUMF, ¶ 28). Further, unlike in <u>Fatima</u>, Defendant stated that Plaintiff could take the additional, requested leave time and, based upon Defendant's approval, Plaintiff did not return to work. In <u>Fatima</u>, Lab Corp. called and wrote Fatima instructing her to return to her job and informing her that her FMLA leave had terminated. There was no such correspondence here; in fact, Plaintiff did not hear from Defendant until it terminated her employment. Defendant's reliance on <u>Fatima</u> is misplaced and its Motion for Summary Judgment on this count is denied.

Thus, Defendant has not provided sufficient evidence to demonstrate that it is entitled to summary judgment on Plaintiff's claim for FMLA interference. Rather, the uncontroverted evidence supports a finding that Plaintiff should be estopped from denying Plaintiff's FMLA claim for benefits.

**II.     Defendant's Motion for Summary Judgment on Plaintiff's ERISA Claim**

    **A.     Standard of Review**

Defendant argues that this Court should apply the abuse of discretion standard for this ERISA claim. (Memorandum in Support, pp. 12-13). Plaintiff, however, argues that the abuse of discretion standard should not apply because such language was in the Summary Plan Description (SPD) but not in the actual insurance policy itself. (Memorandum in Opposition, pp. 13-14). This Court agrees with the sound reasoning of <u>Paulson v. Revere Life Ins. Co.</u>, 323 F.Supp. 2d 919, 940 (S.D. Iowa 2004) (refusing to give effect to the discretionary language in the certificate/SPD where such language was not included in the policy itself). As the SPD is the only document that provides for discretionary review of the Plan administrator, this Court will employ a *de novo* standard of review.

### B. Is Plaintiff Eligible To Receive Benefits Under the FedEx Plan?

To have standing to sue under ERISA, a plaintiff must be a participant, beneficiary, fiduciary or the Secretary of Labor. See 29 U.S.C. §1132(a). ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employee..." 29 U.S.C. §1002(7). ERISA defines "beneficiary" as "a person designated a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. §1002(8).

Defendant argues that Plaintiff and her husband were never employees of FedEx and, therefore, could not be "participants" or "beneficiaries" under the FedEx plan. (Memorandum in Support, pp. 11-15). Defendant's primary basis for denying Plaintiff's claim for benefits under the FedEx Policy issued by ReliaStar Life Insurance Company ("the Policy") and the corresponding Plan, is that the Plan allows only "[f]ull time, regular Employees are eligible to participate" in the Plan. (DSUMF, ¶ 63). The Policy requires an employee to be "actively at work" before the employee can become insured for life insurance benefits. (DSUMF, ¶ 63). Defendant claims that because Plaintiff and her husband never reported to work for FedEx then they were never "active employees" of FedEx. (Memorandum in Support, p. 14). The FedEx life insurance policy, however, provides, "[i]f you have a leave from active service certified by your employer, then for purposes of eligibility and coverage you will be considered actively at work." (Memorandum in Opposition, pp. 16-17).

As explained above in Section I herein, the Court believes that Defendant has failed to demonstrate as a matter of law that Plaintiff and her husband were not employees of FedEx at the time of Paul Murphy's death or at the termination of Plaintiff's employment. If Plaintiff and her husband were employees of FedEx, Plaintiff and her husband would be participants and/or

beneficiaries under the FedEx Plan. Further, the Policy itself takes into consideration that employees who are on FMLA leave are, in fact, active employees. Accordingly, Plaintiff would be entitled to benefits under the FedEx even though she was out on leave.

Defendant also asks for this Court grant summary judgment on Plaintiff's claim for benefits because Plaintiff obtained life insurance benefits under the Watkins life insurance plan. (Reply, p. 16). However, at this stage in the proceedings, the Court cannot determine if Plaintiff's acceptance of insurance benefits would preclude her recovery of benefits from FedEx. Plaintiff claims that she should be permitted to recover under both policies and relies on Robichaux v. Nationwide Mut. Ins. Co., No.1:06CV1165, 2007 U.S. Dist. LEXIS 70673 (S.D. Miss. Sept. 21, 2007). Plaintiff's reliance on Robichaux is misplaced because Robichaux did not involve an ERISA policy but instead involved a Standard Flood Insurance Policy and a homeowners policy that covered the same property. The Robichaux court held that it was possible for the insured to be covered by both a Standard Flood Insurance Policy and a homeowners policy and the plaintiff's recovery under one policy did not preclude recovery under the other. Id. at *8 ("[i]nsureds are entitled to recover their storm losses under all available insurance policies in accordance with the terms of those policies and the evidence showing the cause of the losses"). Nevertheless, this Court cannot state, based upon the undisputed evidence, that Plaintiff is precluded from recovering life insurance benefits under the FedEx policy.

As Defendant has failed to demonstrate that Plaintiff is not be a participant and/or beneficiary under the FedEx plan, this Court denies Defendant's Motion for Summary Judgment on that claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 28) is **DENIED**.

Dated this 8th day of October, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE