UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN A. MURPHY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV01247 JCH |
| | ) | |
| FEDEX NATIONAL LTL, INC., | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on the parties' post-trial briefing. Plaintiff filed a two count Second Amended Complaint ("Complaint" or "Compl.") alleging claims under the FMLA and ERISA (Doc. No. 4). On December 10, 2008, the jury awarded Plaintiff $70,000 in back pay on Plaintiff's FMLA claim. The Court then heard evidence on the remaining non-jury issues. The Court asked the parties to brief the issues related to Plaintiff's claims for reinstatement and front pay, for prejudgment interest, and under ERISA. These issues have been fully briefed and are ready for disposition.

**A.      Reinstatement and Front Pay**

**1.      Reinstatement**

In her Complaint, Plaintiff demanded "reinstatement with full benefits" as part of her prayer for relief (Compl., p. 6). Reinstatement is an available equitable remedy under the FMLA. See 29 U.S.C. § 2617(a)(1)(B) (the court has the authority to award a successful FMLA plaintiff any "equitable relief as may be appropriate, including employment, reinstatement, and promotion"). Plaintiff was previously employed as a "team driver" with her husband for Watkins Motor Lines

("Watkins"). (Compl., ¶ 11). At trial, Plaintiff asserted that she should be reinstated to a line haul driver position[1] or a pickup and deliver ("P&D") position at FedEx.

The Eighth Circuit has held that "in fashioning equitable relief for the plaintiff, the court may grant reinstatement or monetary damages in lieu of reinstatement." Williams v. Valentec Kisco, Inc., 964 F.2d 723, 730 (8th Cir. 1992) (citing Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100 (8th Cir. 1982)). Generally, the jury's verdict in favor of plaintiff on the issue of discrimination is "res judicata" for the purposes of the plaintiff's claim for reinstatement. Dickerson v. Deluxe Check Printers, Inc., 703 F.2d 276, 280 (8th Cir. 1983) (citing Cleverly v. Western Electric Co., 450 F. Supp. 507, 511 (W. D. Mo. 1978), aff'd 594 F.2d 638 (8th Cir. 1979)). "Reinstatement is the preferred remedy for unlawful employment discrimination, and front pay is the disfavored alternative, available only when reinstatement is impracticable or impossible." Salitros v. Chrysler Corp., 306 F.3d 562, 572 (8th Cir. 2002) (citing Kucia v. Southeast Ark. Cmty. Action Corp., 284 F.3d 944, 948-49 (8th Cir. 2002)).

Before the Court may consider the propriety of a front pay award, it must be assured that reinstatement is not feasible or is an otherwise inappropriate remedy. See Williams, 964 F.2d at 730 (remanding issue of front pay and reminding magistrate judge that front pay should not be awarded "unless reinstatement is impossible or impracticable ….") (quoting Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir. 1985)); Voeltz v. Arctic Cat, Inc., 406 F.3d 1047, 1052 (8th Cir. 2005). Courts have identified the following factors as useful in determining whether reinstatement is an appropriate remedy: (1) whether the employer is still in business; (2) whether there is a comparable position available for the plaintiff to assume; (3) whether an innocent employee would be displaced

---

[1]The parties refer to Mr. and Mrs. Murphy's former positions as line haul drivers. Plaintiff defined line haul drivers as drivers who drive from "terminal to terminal all across the country." (Doc. No. 96, p. 38).

by reinstatement; (4) whether the parties agree that reinstatement is a viable remedy; (5) whether the degree of hostility or animosity between the parties would undermine reinstatement; (6) whether reinstatement would arouse hostility in the workplace; (7) whether the plaintiff has since acquired similar work; (8) whether the plaintiff's career goals have changed since the unlawful termination; and (9) whether the plaintiff has the ability to return to work for the defendant employer. Ogden v. Wax Works, Inc., 29 F. Supp. 2d 1003, 1008-15 (N.D. Iowa 1998), aff'd, 214 F.3d 999 (8th Cir. 2000) (internal citations omitted); see also Gross v. FBL Fin. Group, Inc., No. 4:04-CV-60209, 2007 U.S. Dist. LEXIS 98024, at *6 (S.D. Iowa Feb. 15, 2007) (citing cases) ("Other factors which have been considered by the courts include whether there is a position available for the plaintiff to assume, whether an innocent employee would be displaced by reinstatement, and whether the period for reinstatement was expected to be relatively short."). The Court, however finds that a detailed analysis of all of these factors is unnecessary because Defendant has provided evidence that Plaintiff's former position is not available. Specifically, the Court has been provided no evidence that any comparable positions currently are available and thus innocent employees would be displaced by an order for reinstatement.

a.      FedEx has Eliminated Plaintiff's Position

The second factor, whether comparable positions are presently available, does not favor reinstatement. Plaintiff contends that she should be reinstated to a line haul or a P&D position at FedEx. Defendant asserts that no line haul driver position is available in the St. Louis terminal[2] and that the P&D jobs are not similar to line haul driver positions. Plaintiff admitted that she has not seen an advertisement for a line haul driver position in St. Louis with FedEx since the termination of her

_____

[2]During the trial, the parties referred to the St. Louis terminal, but both parties agreed that the terminal is located in St. Charles, Missouri, a city just outside of St. Louis. (12/11/08 Trans., pp. 23-24).

employment. (Dec. 11, 2008 Transcript ("12/11/08 Trans."), Doc. No. 96-4, pp. 18-19). Furthermore, the parties do not dispute that FedEx eliminated Plaintiff's line haul driver position in St. Louis in July 2007. (Plaintiff's Post-Trial Memorandum ("Plaintiff's Memorandum"), Doc. No. 90, p. 2 ("[d]ue to a FedEx reorganization in July 2007, Plaintiff's position would have been eliminated in the St. Louis terminal"); Defendant's Response to Plaintiff's Post-Trial Memorandum and Motion for Judgment as a Matter of Law ("Defendant's Response"), Doc. No. 92, pp. 1-2; Defendant's Surreply to Plaintiff's Post-Trial Memorandum ("Defendant's Surreply"), Doc. No. 95, p. 2);[3] see also Gross, 2007 U.S. Dist. LEXIS 98024, at *9 (the fact that plaintiff's former position no longer exists weighs against reinstatement). Plaintiff testified that she was not looking for line haul positions outside of St. Louis in July 2007 (at the time of FedEx's reorganization), or prior to March 2008 (at the time of her deposition). (Defendant's Response, p. 3; 12/11/08 Trans., p. 12). At trial, Plaintiff testified that she would prefer a position in St. Louis. (12/11/08 Trans., p. 22). Plaintiff also testified, however, that she would accept a line haul position outside of St. Louis. (12/11/08 Trans., pp. 22-23). Given Plaintiff's prior statements (as recently as March 2008) that she would not accept a position outside of St. Louis, the Court finds that her testimony that she would now accept a position outside of St. Louis to be disingenuous and finds that Plaintiff would only accept a line haul position in St. Louis. Because there is no evidence that line haul positions are available in St. Louis, Plaintiff is not entitled to reinstatement. (See 12/11/08 Trans., pp. 18-19).

Plaintiff also claims that she is entitled to reinstatement in a P&D position. Plaintiff bases her belief that P&D positions are available solely upon an internet advertisement. (See 12/11/08 Trans., pp. 13-15). Plaintiff has provided neither this advertisement nor any documentation related to her application for a P&D position with FedEx. (12/11/08 Trans., p. 19). Plaintiff's unsupported

---

[3]The court refers to the page numbers at the bottom of Defendant's Response and Surreply.

statement is insufficient to prove that a P&D position is available.  Cf.  Pet Quarters, Inc. v. Badian,

No. 4:04-CV-697, 2006 U.S. Dist. LEXIS 32695, at *14 (E.D. Ark. May 9, 2006) (unsupported

statements fail to meet burden in invalidating arbitration agreement).  In addition, it has not been

demonstrated that a P&D position is comparable to a line haul position.  Plaintiff was never a P&D

driver at Watkins (12/11/08 Trans., p. 19), and Defendant elicited evidence that P&D positions have

requirements that are different from line haul positions.  (Defendant's Surreply, pp. 2-3).  Plaintiff

admitted that the qualifications, hours of service and pay scale for line haul drivers differ from those

of P&D drivers.  (See 12/11/08 Trans., pp. 19-22).   Neither party has provided evidence regarding

the qualifications for a P&D position, and Plaintiff has not demonstrated that she possesses the

qualifications for a P&D position.  Because the Court has no evidence that a P&D position is

comparable to Plaintiff's former position with Watkins or that Plaintiff was qualified for a P&D

position, the Court lacks evidence to support a finding that Plaintiff should be reinstated to a P&D

position with FedEx.  Accordingly, this factor does not support reinstatement.

Given that there is no position currently available in St. Louis at FedEx for Plaintiff, the third

factor, the displacement of innocent employees, likewise weighs against reinstatement.  Plaintiff's line

haul position was eliminated in July 2007.  (Plaintiff's Memorandum, p. 2; Defendant's Response, pp.

1-2; Defendant's Surreply, p. 2).  Because Plaintiff's former position no longer exists, a Court order

to reinstate Plaintiff would displace an innocent employee.  See Briseno v. Central Tech. Cmty. Coll.

Area, 739 F.2d 344, 348 (8th Cir. 1984)(equitable discretion to make plaintiff whole permits "court

to limit relief so that innocent incumbent employees will not be displaced"); Ray v. Iuka Special Mun.

Separate Sch. Dist., 51 F.3d 1246, 1254-55 (5th Cir. 1995) (finding no abuse of discretion in denying

reinstatement in ADEA case where, inter alia, ordering reinstatement would require displacement of

existing employee).

In response, Plaintiff claims that she has "bumping rights" because of her seniority. (12/11/08 Trans., pp. 7-8). Plaintiff, however, has presented no evidence that "bumping rights" are available at FedEx. (12/11/08 Trans., pp. 11-12). Thus, unless a position were open, a job for Plaintiff at FedEx could be created only at the expense of an innocent employee. Accordingly, this Court will not order reinstatement.

### b. Other Factors Do Not Change this Analysis

#### 1. There is No Evidence of Significant Hostility

"The fifth factor concerns the hostility caused by the underlying events as well as the attendant litigation." Baker v. John Morrell & Co., 263 F. Supp. 2d 1161, 1172 (N.D. Iowa 2003). Defendant argues that hostility between the parties precludes reinstatement. (Defendant's Response, pp. 5-6). The evidence, however, fails to demonstrate a significant amount of hostility in the workplace. Tadlock v. Powell, 291 F.3d 541, 548 (8th Cir. 2002) ("Before awarding front pay, a district court must find the animosity is so extreme that it makes an amicable and productive work relationship impossible.") (citation omitted). Although Defendant claims otherwise, Plaintiff and her former supervisor, Jeff Karnes, do not appear particularly hostile towards each other, apart from the inherent distrust associated with litigation. The hostility between the parties is not more significant than the normal antagonism between parties involved in litigation. Sellers v. Peters, No. 4:97CV2260, 2007 U.S. Dist. LEXIS 87492, at *5 (E.D. Mo. 2007) (citing Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 674 (8th Cir. 1995)) ("Friction from the litigation process alone is an insufficient basis upon which to deny reinstatement." ). The Court, therefore, in the record before it, finds that hostility would not preclude reinstatement, if a position were available for Plaintiff.

2.      The Parties Have Not Provided Evidence Regarding Whether Plaintiff is Qualified for Reinstatement.

Notably absent from the record is any evidence regarding whether Plaintiff remains qualified for her line haul driver position or a position as a P&D driver. Defendant elicited testimony from Plaintiff that she has not driven a truck similar to the truck she drove at Watkins since she began her leave on August 28, 2006. (12/11/08 Trans., pp. 10-11). Except for this testimony, neither party offered testimony or evidence regarding whether Plaintiff meets the license or other requirements for either one of the positions she seeks. In fact, neither party has identified even the requirements for a line haul or P&D position.

Plaintiff correctly noted that "[w]hen analyzing whether a former employee is currently qualified for reinstatement, a presumption exists that the former employee remains qualified to perform the job. The burden shifts to the employer to prove the absence of current qualifications." Thomlison v. City of Omaha, 63 F.3d 786, 790 (8th Cir. 1995); see also Bialaszewski v. Titanium Metals Corp., No. 2:06-CV-1063, 2008 U.S. Dist. LEXIS 45937, at *14-15 (S.D. Ohio June 10, 2008) ("The FMLA mandates that **qualified employees** who return to work within the 12-week period of statutory leave are entitled to be reinstated to their previous position, or its equivalent.") (citing 29 U.S.C. § 2614(a)(1)) (emphasis added)). In Thomlinson, plaintiff was a firefighter for the City of Omaha. The City argued that Thomlinson no longer met the physical fitness requirements for a firefighter. 63 F. 3d at 790. The district court ordered the City to reinstate Thomlinson as a firefighter without making any explicit determination on the issue of whether Thomlinson was physically qualified. Id. The Eighth Circuit held that "[g]iven the importance of public safety and the potential hazards involved in requiring the City to employ an unfit worker, we find such an explicit determination [regarding whether Thomlinson was qualified for her position] necessary." Id. The Court noted that, on remand, "the City retains the burden of demonstrating that Thomlinson is unfit."

Id. The Eighth Circuit found that, if the district court determined that Thomlinson did not possess the physical fitness necessary to perform firefighting duties, "the district court may want to grant front pay or permit a provisional reinstatement conditioned on Thomlinson obtaining the required level of fitness within a specified period of time." Id.

Similarly, here, the parties have failed to provide evidence regarding whether Plaintiff satisfies the requirements for a commercial driver. As with a firefighter, public safety requires that commercial drivers meet certain qualifications for their position, and the Court cannot order Plaintiff to return to her position absent proof of satisfying those requirements. The Court takes judicial notice of the Commercial Motor Vehicle Safety Act of 1986 (among other laws) that establishes minimum national standards which States must meet when licensing Commercial Motor Vehicle Drivers.[4] See Andrews v. Olin Mathieson Chemical Corp., 334 F.2d 422, 430 (8th Cir. 1964) (courts must take judicial notice of the federal statutes involved). Although not explicitly stated, the fact that Plaintiff has not driven a commercial vehicle for over two (2) years (since August 28, 2006) suggests that, if Plaintiff were to be reinstated to her position, "she would have to undergo a substantial amount of retraining before she could attain the skills required to adequately perform the job." Sellers v. Peters, No. 4:97CV2260, 2007 U.S. Dist. LEXIS 87492, at *10-11 (E.D. Mo. Nov. 28, 2007). Because the Court has determined that no position is available for Plaintiff, however, the Court need not determine whether Plaintiff is qualified to resume her former position.

## 2. Front Pay

If reinstatement is not appropriate, the Court may elect, at its discretion, to award the equitable remedy of front pay. Denesha v. Farmers Ins. Exch., 161 F.3d 491, 501 (8th Cir.1998) (endorsing the use of front pay as an alternative form of prospective equitable relief in situations

---

[4]For a summary of these requirements, see the Federal Motor Carrier Safety Administration's website, at http://www.fmcsa.dot.gov/registration-licensing/cdl/cdl.htm (last visited May 6, 2009).

where reinstatement is an inappropriate remedy); <u>Sellers v. Mineta</u>, 358 F.3d 1058, 1063 (8th Cir. 2004) (Front pay is a disfavored remedy, available only "where the circumstances make reinstatement impractical."). The Eighth Circuit has noted that "front pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." <u>Kramer v. Logan Cty. Sch. Dist.</u>, 157 F.3d 620, 626 (8th Cir. 1998).

An award of front pay is "inherently speculative in length of time and when considering possible mitigation by reason of other employment. It is based on probabilities rather than actualities." <u>Mathieu v. Gopher News Co.</u>, 273 F.3d 769, 782 (8th Cir. 2001). "The plaintiff bears the burden of proof in establishing a claim for front pay. A plaintiff must provide the court with the necessary data, including the length of time plaintiff would have worked for the defendant but for the unlawful discrimination and the appropriate rate of pay." <u>Finan v. Good Earth Tools, Inc.</u>, No. 4:06-CV-878, 2008 U.S. Dist. LEXIS 32580, at *22 (E.D. Mo. Apr. 21, 2008) (citing <u>McKnight v. General Motors Corp.</u>, 973 F.2d 1366, 1372 (7th Cir. 1992)); <u>Curtis</u>, <u>Curtis v. Electronics & Space Corp.</u>, 113 F.3d 1498, 1503 (8th Cir. 1997) (citations omitted) ("The plaintiff carries the initial burden to provide proof of a basis for a front pay award, and the burden then shifts to the defendant to prove it is inappropriate."). The district court has discretion in determining an appropriate front pay award. <u>Curtis</u>, 113 F.3d at 1504; <u>Salitros</u>, 306 F.3d at 573. "When awarding front pay, a district court should consider the plaintiff's ability to find new employment with comparable compensation and responsibility." <u>Christensen v. Titan Distrib.</u>, 481 F.3d 1085, 1098 (8th Cir. 2007)(internal citation omitted); <u>Gregory v. Garrett</u>, No. 87-0265, 1990 U.S. Dist. LEXIS 1460, at *4-5 (W.D. Mo. Feb. 6, 1990) ("The calculation of front pay is not, however, a rigid formula. The time period for

determining front pay need not necessarily be from the date of judgment to the date of expected retirement.").

Plaintiff argues that Defendant failed to rebut the presumption that she is entitled to post-trial remedial remedies, including reinstatement and front pay. <u>See</u> Plaintiff's Post-Trial Reply Memorandum ("Plaintiff's Reply"), Doc. No. 93, pp. 3-4 (citing <u>Di Salvo v. Chamber of Commerce</u>, 568 F.2d 593, 598 (8th Cir. 1978) ("Once plaintiff in a Title VII case such as this has proven her case and established what she contends to be her damages, the burden of going forth to mitigate the liability or to rebut the damage claim rests with the defendant.")); <u>see also</u> <u>Denesha</u>, 161 F.3d at 502 (defendant "bears the burden of showing that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them"). Although Plaintiff relies on the decision, <u>DiSalvo</u> fails to buttress Plaintiff's position that she does not have to provide evidence to support her entitlement to post-trial remedies, particularly for front pay. In <u>DiSalvo</u>, the plaintiff provided reasons for her inability to find work after the termination of her employment and also provided evidence that she had attempted to find other employment. After plaintiff met this initial burden, the defendant bore "the burden of going forth to mitigate the liability or to rebut the damage claim." 568 F.2d at 598. The district court held that defendant's liability was not mitigated because there was no evidence that plaintiff failed diligently to seek employment after she relocated to Miami as a direct result of the discrimination. <u>Id.</u>; <u>see also</u> <u>Miller v. AT&T</u>, 83 F. Supp. 2d 700, 706-07 (S.D. W. Va. 2000) (citing <u>Edwards v. School Bd. of the City of Norton, Virginia</u>, 658 F.2d 951, 956 (4th Cir. 1981), aff'd 250 F. 3d 820 (4th Cir. 2001) ("The employer has the burden of proving that the employee failed to exert reasonable efforts to mitigate her damages.").

In contrast, Plaintiff has not met her initial burden to demonstrate the amount, duration, and other elements of a front pay award. <u>See</u> <u>Finan</u>, No. 4:06-CV-878, 2008 U.S. Dist. LEXIS 32580,

at *22. If Plaintiff had met this initial burden then the burden would shift to Defendant to demonstrate that such front pay is not warranted and/or that Plaintiff failed properly to mitigate her damages. Plaintiff provided no basis from which the Court can calculate a front pay award. Moreover, Plaintiff provided no expert testimony regarding her career expectancy, opportunities for other employment, or other necessary information for this Court to calculate front pay. Any possible front pay award would be mere speculation. Having failed to meet her initial burden, this Court cannot award front pay to Plaintiff. See also Benson v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-CV-237-F(1), 2006 U.S. Dist. LEXIS 97666, at *58-59 (E.D.N.C. July 18, 2006)(denying plaintiff's request for front pay because such award would be "unduly speculative" where plaintiff failed to present evidence of plaintiff's work expectancy, past success of her independent business venture or growth potential for her business).

Furthermore, Defendant has also asserted that Plaintiff is not entitled to front pay because Plaintiff's position at FedEx was eliminated in July 2007. (Plaintiff's Memorandum, p. 2; Defendant's Response, pp. 1-2; Defendant's Surreply, p. 2); Finan, 2008 U.S. Dist. LEXIS 32580, at *22-23 ("In determining the length and amount of front pay, the Eighth Circuit has approved consideration of the length of time the plaintiff has been employed with the defendant-employer and the likelihood employment would have continued absent the discrimination."). [5] Defendant contends that Plaintiff cannot receive front pay for a job that did not exist after July 2007. See Defendant's Response, pp. 2-3 (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1182 (2d Cir. 1996) ("Because the plaintiff's job was scheduled to be eliminated in any case, an award of front pay beyond that date would have impermissibly placed her in a better position than she would have been in had she not

---

[5]According to Defendant, if Plaintiff had not accepted a position outside of St. Louis on July 23, 2007, when the reorganization occurred, Plaintiff would have been entitled to ten weeks of pay at $21 per hour. (12/11/08 Trans., pp. 26-27).

been fired."); <u>Nemeth v. Clark Equipment Co.</u>, No. K84-433 CA8, 1988 U.S. Dist. LEXIS 16435, at *12 (W.D. Mich. Sept. 9, 1988) ("plaintiffs may not recover front pay for the time after their jobs would have been eliminated for non-discriminatory reasons")); <u>Voeltz v. Arctic Cat, Inc.</u>, 406 F.3d 1047, 1052 (8th Cir. 2005) (in ADA claim, where plaintiff's employment would have been terminated notwithstanding his disability, plaintiff was not entitled to reinstatement or front pay because the jury found that the plaintiff would not have been working for the defendant regardless of his disability). The Court finds this authority persuasive but need not decide this issue because, as stated, Plaintiff has failed to provide evidence necessary to support a front pay award.

**B.  Back Pay & Liquidated Damages**

The jury awarded Plaintiff a judgment of $70,000 in back pay for Defendant's FMLA violation. The jury also found that Defendant had not proven that it violated the FMLA in good faith. "A plaintiff who makes out a successful claim under the FMLA is generally entitled to an award of liquidated damages, which is an amount equal to the amount of back pay plus interest at the prevailing rate." <u>Miller</u>, 83 F. Supp. 2d at 709 (citing 29 U.S.C. § 2617(a)(1)(A)(iii)); <u>see also Persky v. Cendant Corp.</u>, 547 F. Supp. 2d 152, 164 (D. Conn. 2008) (quoting <u>Reich v. Southern New Eng. Telcoms. Corp.</u>, 121 F.3d 58, 71 (2d Cir. 1997) ("Under the FMLA, 'double damages are the norm, single damages the exception.'"); <u>Nero v. Industrial Molding Corp.</u>, 167 F.3d 921, 929 (5th Cir. 1999) (the district court's discretion to reduce the liquidated damages "must be exercised consistently with the strong presumption under the statute in favor of doubling"). Pursuant to statute, the Court awards Plaintiff liquidated damages, in addition to the amount already awarded by the jury, in the amount of the back pay award and the prejudgment interest on the back pay award. 29 U.S.C.

§2617(a)(1)(A)(iii); 29 C.F.R. §825.400(c).[6]  Plaintiff shall file, within twenty (20) days, a current calculation of the liquidated damages award.

Defendant argues in its post-trial briefing that Plaintiff's back pay should be reduced and that a liquidated damages award is improper.  Specifically, Defendant argues that the jury miscalculated Plaintiff's back pay award.  (Defendant's Response, pp. 7-11; Defendant's Surreply, pp. 2-3).  Defendant also argues that the evidence does not support the jury's finding that Defendant did not act in good faith in terminating Plaintiff from her job, primarily because FedEx and its agents believed that Plaintiff was an employee of Watkins, not FedEx.  (Defendant's Response, p. 11).

Defendant claims that the Court requested briefing on all issues related to damages and that the Court put "counsel on notice at trial of its intention to incorporate its Rule 50 arguments in these post-trial briefs after the jury returned its verdict and Plaintiff gave evidence on damages, which the Court accepted and approved."  (Defendant's Surreply, p. 3).  This argument is not well-taken at this stage of litigation.  Defendant's contention that the jury's award should be reduced can only be addressed in a post-judgment, Rule 50 motion.  (Plaintiff's Reply, p. 5).  Accordingly, the Court will not address Defendant's arguments on liquidated damages or back pay at this time.

## C.      Prejudgment Interest

"An 'award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district court.'"  Finan, 2008 U.S. Dist. LEXIS 32580, at *29 (quoting Cargill, Inc. v. Taylor Towing Service, Inc., 642 F.2d 239, 241 (8th Cir. 1981)); Huber v. Wal-Mart Stores, Inc., No. 04-2145, 2006 U.S. Dist. LEXIS 21287, at *15 (W.D. Ark. Mar. 31, 2006) (citing Washington v. Kroger Co., 671 F.2d 1072, 1078 (8th Cir. 1982)).  "Generally, prejudgment interest should be

---

[6]See 29 U.S.C. §2617(a)(1)(A)(iii) ("[A]n additional amount as liquidated damages equal to the sum of the amount described in clause (i) [the amount of wages salary, employment benefits, or other compensation] and the interest described in (ii) ....").

awarded 'unless exceptional circumstances exist making the award of interest inequitable.'" Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1194 (8th Cir. 2000) (quoting Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986)). "The Eighth Circuit Court of Appeals has noted that prejudgment interest serves at least two purposes: '(1) it helps compensate plaintiffs for the true cost of money damages they have incurred, and (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation.'" Hite v. Vermeer Mfg. Co., 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005) (quoting General Facilities, Inc. v. National Marine Serv., Inc., 664 F.2d 672, 674 (8th Cir. 1981)).

Title 29, United States Code, section 2617 provides that when an employer violates the FMLA, such employer shall be liable to the employee for "the interest on the amount described in clause (i) calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii). Clause (i) equates in this matter to the jury's award for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation [of the FMLA]," or $ 70,000.00. 29 U.S.C. § 2617(a)(1)(A)(i).

In its Response, Defendant claims that the issue of prejudgment interest should have been decided by the jury. (Defendant's Response, pp. 10-11).[7] Plaintiff, however, is correct that the Court addressed this issue with the parties prior to trial and both sides agreed that prejudgment interest is a nonjury issue. Defendant waived its right to raise this issue now.

The FMLA is silent regarding the applicable interest rate used in calculating any interest owed. The decision regarding which interest rate applies is a matter confined to the district court's discretion. Hite, 361 F. Supp. 2d at 949. The parties agree that the rate set forth in 26 U.S.C. §6621

---

[7]Defendant does not address the issue of prejudgment interest in its Surreply.

- 14 -

is proper (Plaintiff's Memorandum, pp. 4-5; Defendant's Response, p. 11). Plaintiff requests back pay from October 12, 2006, when Plaintiff would have returned to work from the 30 day FMLA leave she was denied, until the entry of final judgment in this case. The Court grants Plaintiff's request for prejudgment interest on the backpay award, and Plaintiff shall file, within twenty (20) days of the date of this opinion, a current computation thereof. See EEOC v. Butler, 624 F. Supp. 686, 694-695 (W.D. Mo. 1985).

### D.    ERISA claim

On September 28, 2006, Prudential[8] paid Susan Murphy $95,000 as a "Death Benefit," and $45,000 as a "Dependent Death Benefit" for her husband's death. (Plaintiff's Memorandum, p. 7; 12/11/08 Trans., p. 69).[9] These benefits were paid based upon the Murphys' employment with Watkins, not FedEx. (Id.) For purposes of this opinion, the Court assumes that Mr. and Mrs. Murphy were employees of FedEx at the time of Mr. Murphy's death and that a *de novo* standard of review applies.[10]

Defendant argues that Plaintiff was only entitled to the amount she previously received from Prudential under the Watkins Plan because Plaintiff's increased coverage under the FedEx Plan never

---

[8]Plaintiff applied for and received benefits from Prudential, which supplied benefits under the Watkins Plan. (12/11/08 Trans., p. 85). Initially, Prudential was going to be the vendor for benefits under the FedEx Plan, but FedEx ultimately chose ReliaStar to implement its Plan. (See Defendant's Exhibit ("D. Ex.") X; 12/11/08 Trans., pp. 84-86). The terms of the FedEx Plan under ReliaStar differed from the proposed terms under Prudential. (Id.)

[9]Plaintiff elaborates that, of the $95,000 "death benefit," $80,000 was Mr. Murphy's supplemental coverage and $15,000 was the basic coverage from Watkins. (Plaintiff's Memorandum, p. 7). Of the $45,000 payment, $40,000 was Mrs. Murphy's supplemental coverage and $5,000 was her basic coverage from Watkins for her spouse. (Plaintiff's Memorandum, p. 8).

[10]The parties extensively briefed these issues. Even assuming that the Court finds in Plaintiff's favor on these issues (i.e., the Murphys were FedEx employees and the *de novo* standard of review is proper), the Court nonetheless holds that Plaintiff is entitled only to the amount already paid by Prudential under the Watkins Plan. Accordingly, the Court does not need to address whether FedEx was the Murphys' employer or the correct standard of review.

became effective.  Defendant points out that under the FedEx Plan from ReliaStar, the effective date of the change in the amount of the insurance would not have occurred until several months after Mr. Murphy's death, if at all.  See D. Ex. X, p. 4.

### 1. Summary Plan Description Does Not Conflict with the Terms of the Policy.

Plaintiff asserts that the Summary Plan Description (SPD) and the Policy conflict regarding the effective date for coverage under the FedEx Plan and, consequently, the effective date in the FedEx Policy should not apply.  Plaintiff cites to the SPD which provides, under the caption "Effective Date for Employee Coverage,"

> An Employee will be covered under the Plan on the first day following 30 days of full time employment provided the Employee satisfies all of the following: (1) Eligibility Requirements, and (2) Enrollment Requirements of the Plan.

(Plaintiff's Exhibit ("Pl. Ex.") 52, p. 9).  Similarly, for the effective date for dependent coverage, the SPD requires that the following criteria must be met for coverage: "(1) Eligibility Requirements, (2) Employee is covered under the Plan and (3) Enrollment Requirements of the Plan."  (Id.)  Furthermore, under the SPD, if an individual "became an employee of [FedEx] on September 4, 2006,[11] and [was] employed by Watkins Motor Lines, Inc. immediately prior to [the individual's] employment with [FedEx], service with Watkins Motor Lines, Inc. [would] be counted in determining [the individual's] eligibility."  (Pl. Ex. 52, p. 5).  That is, a Watkins employee would receive credit toward the 30 day waiting period for coverage under the FedEx Plan.  Plaintiff argues that this effective date language in the SPD conflicts with the FedEx Policy and, therefore, the language in the SPD must be given effect.  The Court, however, finds that the language in the SPD and the Policy do not conflict.

---

[11]As stated, for purposes of this opinion, the Court assumes that Mr. and Mrs. Murphy became employees of FedEx as of this date.

The SPD provisions cited above (Pl. Ex. 52, pp. 5, 9) do not contradict the requirements in the FedEx Policy regarding the effective date for an increase coverage. Initially, Plaintiff neither explains nor offers any evidence as to how the SPD and the Policy supposedly conflict. Plaintiff neither cites specific provisions of the Policy and of the SPD that conflict nor otherwise explains how such provisions are disharmonious.

Upon examination, the provisions of the SPD merely require that the eligibility and enrollment requirements of the Policy be satisfied before coverage may become effective. (Pl. Ex. 52, p. 9). The SPD is silent regarding the specific requirements that must be met by the employee to effect an increase in the amount of coverage under the Policy. The SPD, therefore, can be read harmoniously with the more specific requirements in the Policy.

While the SPD is silent regarding the effective date of a change or increase in coverage, the Policy explicitly provides the effective date for a change or increase in coverage. The Policy provides as follows for an employee's change in insurance:

Effective Date of Change in Amount of Insurance

If there is an increase in the amount of your insurance, the increase will take effect on:

* The Policy Anniversary on or after the date of the increase, if you are actively at work on the date of the increase.

* The date you return to active work, if you are not actively at work on the Policy Anniversary on or after the date of the increase. (D. Ex. X, p. 4).

Similar provisions apply for the effective date of the Dependent's Insurance and the Change in the Dependent's Insurance:

DEPENDENT'S INSURANCE

Effective Date of Dependent's Insurance

Your dependent's insurance starts on the latest of the following dates:

***

\* The date of your dependent's final discharge from any facility for care and treatment of sickness or accidental injury, for any dependent, other than a newborn, who is confined in such facility on the date your dependent's insurance starts. (D. Ex. X, p. 7).

Effective Date of Change in Amount of Insurance

If there is an increase in the amount of your dependent's insurance, the increase will take effect on:

\* The date of your insured dependent's final discharge from such facility, if your insurance dependent is confined to such facility on the Policy Anniversary on or after the date of the increase. (D. Ex. X, p. 8).

Comparing the SPD and the Policy provisions regarding changes in the amount of insurance indicates that the Policy and the SPD do not conflict regarding the requirements for the effective date of coverage, specifically with respect to an increase in coverage. (See Pl. Ex. 52, pp. 5, 9; D. Ex. X, pp. 4, 7, 8). Accordingly, the language of the Policy that provides the effective date for a change or increase in coverage applies to Plaintiff's claim.

2. **The Changes/Increases to Mr. and Mrs. Murphy's Coverage Never Became Effective**.

When the Murphys enrolled in the FedEx Plan, Plaintiff and her husband had the option to retain the coverage they had under the Watkins plan or to change their coverage. (Defendant's Response, p. 24). Both Plaintiff and her husband elected to increase their coverage under the FedEx Plan. (Id.; 12/11/08 Trans., p. 76). It is undisputed that Plaintiff received the benefits she was owed under the Watkins Plan. (12/11/08 Trans., pp. 69-70). Plaintiff seeks the increased employee and dependent coverage. (12/11/08 Trans., p. 76).

Defendant argues that this change in coverage never took effect under the plain language of the FedEx Policy. (See D. Ex. X, p. 4). In other words, even though the Murphys applied for the increase, given that Mr. Murphy was confined to the hospital at the time of the acquisition of Watkins by FedEx, that benefit increase would not have been effective. The Policy provides that the effective

date of an increase in coverage does not take effect until the Policy Anniversary[12] on or after the date of the increase, if the employee was actively at work on the date of the increase. (D. Ex. X, p. 4). In the alternative, the increase becomes effective the day the employee returns to work if the employee was not actively at work on the Policy Anniversary on or after the date of the increase. (12/11/08 Trans., p. 88). It is undisputed that Mr. Murphy died prior to being released from the hospital on the Policy Anniversary date and, consequently, the increase in coverage never became effective. (D. Ex. X, p. 4).[13] Carrie Johnson, plan administrator, testified that if Mr. Murphy had actually been an employee of FedEx on the date that he passed away but he had not returned to work, he would have been eligible for the amount of his coverage with Prudential through his employment with Watkins. Because Mr. Murphy never returned to work, the new increases never took effect. (12/11/08 Trans., p. 95). The increases would have been effective, at the earliest, on January 1, 2007. Because the death of Plaintiff's husband occurred before the effective date of their increases in coverage, Plaintiff would not be entitled to any additional benefits under the FedEx Plan. (12/11/08 Trans., p. 99).

Similarly, Defendant argues that the increase in the dependent coverage never took effect pursuant to the language of the Policy. (See D. Ex. X, pp. 7-8). The Policy provided that Defendant's Insurance did not become initially effective if a Dependent is hospitalized on the effective date until the Dependent is released from the hospital. (12/11/08 Trans., p. 89; D. Ex. X, p. 7). The increase in the amount of dependent coverage would not have been in effect until, at the earliest, the following Anniversary Date (January 1) after the dependent's release from the

---

[12]The Policy Anniversary Date is January 1 of each year. (D. Ex. X, p. 27).

[13]Indeed, even for an employee actively at work, the increase in coverage would not take effect until the next Policy Anniversary date. (Defendant's Response, p. 25).

hospital. (D. Ex. X, pp. 4, 8). As it is clear that Mr. Murphy was never released from the hospital, the coverage never became effective.

In summary, Carrie Johnson testified that "had [Mrs.] Murphy been an employee of FedEx on the date Mr. Murphy passed away, she would not have been entitled to any increase in benefits because her husband was confined to a hospital." (12/11/08 Trans., p. 96). Instead Mrs. Murphy would have been eligible for the coverage for Mr. Murphy that existed prior to his admission into the hospital or prior to the acquisition of Watkins by FedEx. (Id.). Plaintiff admitted that her husband was hospitalized between August 20, 2006 and when he passed away on September 7, 2006. (Doc. No. 96, pp. 74, 82). Under the express, undisputed terms of the FedEx Policy, Plaintiff's election to increase her supplemental coverage on Mr. Murphy could not have become effective until January 2007 due to his hospitalization.

Accordingly, Plaintiff has already been paid what was owed to her whether or not she was a FedEx employee at the time of her husband's death. Under the terms of the Policy, Plaintiff was only entitled to the amount paid from Prudential under the Watkins Plan because the changes and/or increases she and her husband requested never took effect. The $140,000 paid to Plaintiff properly compensated her under the terms of the Policy.

**IT IS HEREBY ORDERED** that Plaintiff's request for reinstatement and/or front pay is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's request for prejudgment interest is **GRANTED**. Plaintiff has twenty (20) days from the date of this order to file a calculation of this award. At the same time, Plaintiff shall also file a Motion for Attorneys Fees and a Bill of Costs.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's request for liquidated damages is **GRANTED**. Plaintiff has twenty (20) days from the date of this order to file a calculation of this award.

**IT IS HEREBY FURTHER ORDERED** that Defendant's request for remitter of the backpay and liquidated damages award is **DENIED** as premature.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's claim under is ERISA is **DENIED**.

Dated this 11th day of May, 2009.




/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE